UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARRIOTT INTERNATIONAL INC *et al.*,<br><br>　　　　　Defendants. | Case No. C16-1875 RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS |

## I.　INTRODUCTION

This matter comes before the Court on Defendant Marriott International's Motion to Dismiss (Dkt. #4) and Plaintiff Jane Johnson's subsequent Motion for Leave to File a Second Amended Complaint to add additional parties (Dkt. #7). Plaintiff also requests this Court relate the filing date of the second Amended Complaint to the filing date of the Original Complaint, December 7, 2016. Dkt. #7.

The Court has determined that oral argument in unnecessary. For the reasons set forth below, the Court GRANTS Plaintiff's Motion for Leave to Amend her Complaint (Dkt. #7), rendering Defendant's Motion to Dismiss (Dkt. #4) moot.

## II.　BACKGROUND

**A. Factual Summary**

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 1

Plaintiff Jane Johnson was a guest at the JW Marriott Hotel Bangkok while visiting her son stationed in Thailand. Dkt. #7-1 at ¶ 1. Plaintiff has regularly stayed at Marriott hotels, and chose to stay at the JW Marriott in Bangkok based on her experience with Marriott hotels and reviews of its service. *Id.* at ¶ 14-16. Plaintiff alleges that the JW Marriott logo is prominently displayed on both the outside and inside of the hotel where she stayed in Bangkok, appearing on everything from the guest registration card to napkins in the dining room. Dkt. #10 at ¶ 5.

On December 8, 2015, Plaintiff entered the hotel through the mezzanine level. Dkt. #7-1 at ¶ 21. Plaintiff tripped over the raised portion of the walkway and fell. *Id.* Plaintiff was taken to a Bangkok hospital and diagnosed with a "comminuted impact fracture of the right humeral head and neck." *Id.* at ¶ 22. Determining she was unfit to take her scheduled flight back to the United States that day, doctors sent Plaintiff for emergency surgery. *Id.* Plaintiff was not discharged until three days later, and has since suffered additional complications resulting from the surgery. *Id.*

Defendant Marriott International states via declaration that "at the time of the Incident, the Hotel was and remains owned by The Erawan Group Public Company Limited ("Erawan")." Dkt. #5 at 2. Erawan is a company organized and existing under the laws of Thailand with its principal place of business in Bangkok, Thailand. *Id.*

Defendant further states that at the time of the incident, a wholly owned subsidiary of Marriott International, Luxury Hotels & Resorts Limited ("LHR"), managed and operated the JW Marriott Bangkok Hotel. *Id.* LHR is also a company organized and existing under the laws of Thailand, with its principal place of business in Bangkok, Thailand. *Id.*

After Plaintiff's accident, an insurance investigator sent Plaintiff an email (Subject: Incident at the JW Marriott Bangkok on 8 December 2015), identified herself as Ratchdawan

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 2

Polyudhapoom, and gathered information about Plaintiff's injuries. Dkt. #10 at ¶ 10. Plaintiff believed Ms. Polyudhapoom represented Marriott hotels. *Id.* Ms. Polyudhapoom later told Plaintiff's counsel that she worked for McClarens, a company hired to investigate the incident. Dkt. #7 at 4. Ms. Polyudhapoom referred Plaintiff's counsel to the American International Group ("AIG"), the insurance company handling Plaintiff's claim. *Id.* Over a period of months, Plaintiff's counsel had several telephone and email exchanges with Denise Wasserman, an AIG claims adjuster for Plaintiff's case. AIG asked Plaintiff's counsel to send settlement letters. Dkt. #9 at ¶ 3. Plaintiff's claim "was always identified as 'Marriott/Johnson/Claim no. N00912256.'" Dkt. #7 at 5. Neither Ms. Polyudhapoom nor Ms. Wasserman ever indicated that the JW Marriott Hotel was not owned by Marriott International, Inc. *Id.* at 4-5.

### B. Procedural Summary

When Plaintiff filed her First Amended Complaint, Plaintiff and her counsel believed Marriott International was the owner and operator of JW Marriott Bangkok. Dkts. #7 at 5, #9 at ¶ 7 and #10 at ¶ 5.

On February 7, 2017, Defendant Marriott International filed a three-pronged Motion To Dismiss under Rules 12(b)(6), 12(b)(7), and the doctrine of *forum non conveniens*. *See* Dkt. #4 at 1. Regarding its 12(b)(6) motion, Defendant argues that because it is neither the owner of the JW Marriott Bangkok nor the entity responsible for managing or operating the hotel, it did not owe Plaintiff a duty of care as a matter of law. Dkt. #4 at 6-7. Regarding its motion under Rule 12(b)(7), Defendant argues that Plaintiff's failure to join LHR, the wholly-owned Marriott subsidiary, prejudices Defendant and warrants dismissal.[1] Defendant Marriott alternatively

---

[1] Defendant does not appear to make the same argument for Erawan. *See* Dkt. #4 at 7-8.

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 3

requests dismissal based on the doctrine of *forum non conveniens*, arguing Thailand is the appropriate forum for adjudicating Plaintiff's claims. Dkt. #4 at 9.

Plaintiff responds: (1) Defendant Marriott may be liable based on theories of "apparent agency" and "alter ego"; (2) Defendant's 12(b)(7) argument is unpersuasive because plaintiffs are not required to sue all potential tortfeasors at once, nor has Defendant demonstrated that the Court could not accord complete relief without additional parties; and (3) Thailand does not provide an acceptable forum for Plaintiff's case, so dismissal under *forum non conveniens* is inappropriate. Dkt. 11.

Plaintiff then filed the instant Motion seeking leave to file a Second Amended Complaint to both add Erawan and LHR as defendants and to relate the filing date back to the filing date of the original complaint, December 7, 2016, for statute of limitations purposes. *See* Dkt. #7.

In response, Defendant first argues that adding Erawan and LHR would be futile because this Court lacks personal jurisdiction for the would-be defendants. Dkt. #14 at 4. Defendant next characterizes Plaintiff's proposed second amended complaint as "attempting to plead additional theories of liability against Marriott, Erawan, and LHR (collectively, "Defendants")," *see id.* at 2-3, but it has not argued that it would be prejudiced by these "different" legal theories. Rather, it argues that Plaintiff has failed to present sufficient evidence to support a theory of Defendant's liability. *Id.* at 6-7. Finally, Defendant has not argued against allowing Plaintiff's amended complaint to relate back to the date of the filing of the original complaint. *Id.* For the reasons set forth below, the Court grants Plaintiff's motion both to amend her complaint and to relate the causes of action against the new parties back to the filing date of the original complaint.

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 4

# I. DISCUSSION

## A. Legal Standard

Previously amended pleadings may be subsequently amended only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a).[2] In the absence of consent, "[t]he court should freely give leave when justice so requires." *Id.* Leave should be denied only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint.").

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman,* 371 U.S. at 182 (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Thus, courts apply the standard with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003), and should grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

The Court begins by noting that Defendants do not directly address the common factors of bad faith, undue delay, prejudice, or whether Plaintiff has previously amended the complaint. *See* Dkt. #14. Thus, the crux of the inquiry is whether Plaintiff's amendment would be futile, as

---

[2] Plaintiff's counsel notes they experienced technical difficulties when filing the original complaint, Dkt. #1, so it would appear as though the complaint had already been amended. *See* Dkt. #7 at 5-6. Nevertheless, the instant motion (Dkt. #7) contains Plaintiff's first substantive amendment to her Complaint.

Defendant argues. Dkt. #14 at 3. An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Courts must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

### B. Adding Defendants LHR and Erawan

Defendant Marriott International argues that granting leave for Plaintiff to amend her complaint to add LHR and Erawan as defendants would be futile because this Court lacks personal jurisdiction over the two would-be defendants. The Court disagrees.

A federal district court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the state law of the forum. Fed. R. Civ. P. 4(k)(1)(A). Washington's long-arm statute permits the exercise of jurisdiction to the full extent of the U.S. Constitution's due process clause. *See* RCW 4.28.185; *Shute v. Carnival Cruise Lines,* 113 Wn. 2d 763, 783 P.2d 78, 79–80 (1989), *rev'd on other grounds, Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991). Thus the analysis of personal jurisdiction collapses into a single question, namely whether the exercise of jurisdiction comports with due process.

"Under the due process analysis, a defendant may be subject to either general or specific personal jurisdiction." *Easter v. American West Fin.,* 381 F.3d 948, 960 (9th Cir. 2004). Plaintiff's Proposed Complaint alleges this Court has "personal and/or general jurisdiction" over Erawan and LHR. Dkt. #7-1 at 4. Defendant only appears to argue that this Court cannot exercise *general* jurisdiction over the would-be defendants. Dkt. #14 at 4-5. Specifically, Defendant argues Erawan and LHR do not have sufficient contacts with Washington to support

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 6

exercise of general jurisdiction because both companies have their principal places of business in Bangkok, Thailand.[3] *Id.*

General jurisdiction is available "[i]f the defendant's activities in the forum are substantial, continuous and systematic." *Doe,* 248 F.3d at 923. General jurisdiction "is an exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004).

Plaintiff does not appear to articulate a theory of general jurisdiction over Erawan and LHR based on their direct contacts with Washington. *See* Dkt. #15 at 3. Rather, Plaintiff argues there may be general jurisdiction over Erawan and LHR as "alter egos" of Marriott International. *Id.* In short, Plaintiff argues for general personal jurisdiction by showing the parent and the subsidiaries should be deemed one entity—"alter egos" of one another—and then imputing the activities of the U.S. parent company to the subsidiary companies. *Id.*

As an initial matter, Defendant is silent on whether Plaintiff can establish the necessary elements of the alter ego test for Erawan. Dkt. #14 at 6. As to LHR, Defendant argues that it was not engaged in any conduct which would support piercing the corporate veil or reflect that LHR and Marriott International are "not really separate entities." Dkt. #14 at 6 (citing Dkt. # 5). Defendant's argument is unpersuasive, and the Court will not rule out Plaintiff's theory of general jurisdiction based on Defendant and LHR being "alter egos" at this early stage of litigation.

---

[3] Defendant also argues that Erawan's website and annual financial reports do not contain any indication that Erawan conducts business outside of Thailand. Dkt. #14 at 4-5. This statement lends further support to Plaintiff's theory that Defendant Marriott acts as a marketing conduit for would-be defendants. *See Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir. 2001) ("[W]here a parent corporation uses its subsidiary as a marketing conduit and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied.").

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 7

To satisfy the alter ego test, a plaintiff "must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Unocal,* 248 F.3d at 926 (alterations in original) (quoting *AT & T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir. 1996)).

Here, Plaintiff alleges Marriott uses its name and reputation to send customers to hotels run by subsidiaries or franchisees, "and then attempts to avoid liability." Dkt. #15 at 3. Further, Defendant Marriott allegedly provides the mechanism for Washington residents to consummate a transaction with Defendants Erawan and LHR, not to mention Erawan and LHR allegedly use the same logo in marketing, and presumably both benefit from this relationship. Dkt. #15 at 3. Seeing as these facts could form the basis of an alter ego theory of personal jurisdiction and that the Court likely has general or specific jurisdiction over Defendant Marriott, Plaintiff's addition of LHR is not futile.

**C. Adding New Theories of Liability Against Defendant Marriott International**

Plaintiff's proposed amended complaint puts forth theories of Defendant Marriott's liability based on apparent agency and alter ego. *See* Dkt. #7-1. Defendant argues that Plaintiff's addition of new theories of vicarious liability are futile because "there is no evidence to suggest that this Court should pierce the corporate veil" or allow Defendant Marriott International to be held liable for the conduct of LHR under an agency theory. Dkt. #14 at 7. Defendant's arguments fail.

*1. Alter Ego*

The alter ego theory derives from the notion that courts should not respect the separateness of a corporation and its parent where the parent exerts such an amount of control

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 8

and dominance over the corporation that it becomes a mere shell or "alter ego" of the parent for accomplishing improper purposes. *United States v. Bestfoods,* 524 U.S. 51, 61-2 (1998).[4]

As stated above, Defendant points to a declaration prepared in support of its Motion to Dismiss indicating that Defendant Marriott "did not direct or participate in the methods or means by which LHR or Erawan operated the Hotel as required to pierce the corporate veil." Dkts. #14 at 6 and #5. Further, Defendant argues "no facts exist to support Plaintiff's newly proposed theories of vicarious liability." Dkt. #14 at 6. However, the facts listed above demonstrate the potential for an alter ego theory of liability. Put simply, Defendant has not shown that there are no facts that can be proved under the amendment to the pleadings to constitute a valid alter ego theory of liability.

### 2. Apparent Agency

Plaintiff also argues that Defendant Marriott may be liable under a theory of "apparent authority" or "apparent agency," which is to say that, even if Marriott International did not actually control the condition that caused her injury, it could still be liable for creating the impression that Hotel guests were actually "dealing with" Defendant Marriott International. Rather than put forward its own arguments as to why this amendment would be futile, Defendant merely distinguishes cases Plaintiff offered in her response to Defendant's Motion to Dismiss Dkt. #14 at 7-8 (arguing Plaintiff relies on cases that involve a franchisor's liability for conduct of a franchisee rather than a parent-subsidiary relationship). Not only has Defendant provided no legal authority that this distinction makes a difference in the context of apparent

---

[4] "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia,* the corporate form would otherwise be misused to accomplish certain wrongful purposes . . . ."). *Bestfoods,* 524 U.S. at 61-2.

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 9

agency doctrine,[5] but Defendant has not come close to meeting its burden of showing that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid claim." *See Missouri ex rel. Koster*, 847 F.3d at 656. To the contrary, Plaintiffs have made allegations that could potentially establish that Defendant Marriott International held Erawan or LHR out as its agent and that Plaintiff reasonably believed the statements.

Washington courts have approved the Restatement's view of the doctrine of apparent agency. *See Rosalez v. Baker*, No. C09-0065-JCC, 2010 WL 4068926, at *6 (W.D. Wash. Oct. 15, 2010) (citing *Restatement (Second) of Agency* § 267). Under the Restatement, "[o]ne who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." *Restatement (Second) of Agency* § 267 (1957). The doctrine of apparent agency can attach liability even though no express agency relationship exists. *See, e.g., Sims v. Marriott Int'l, Inc.*, 184 F. Supp. 2d 616, 617 (W.D. Ky. 2001).

Thus, in order to recover under the theory of apparent agency, Plaintiff must show that she subjectively believed that Erawan or LHR was an agent of Marriott International, and that her subjective belief was objectively reasonable. *Rosalez v. Baker*, No. C09-0065-JCC, 2010 WL 4068926, at *6 (W.D. Wash. Oct. 15, 2010) (citing *Restatement (Second) of Agency* § 267). She must also show that her good-faith reasonable belief is attributable to actions taken by the purported principal, or to the purported principal's failure to act when action would have been required to dispel her reasonable misunderstanding. *Adamski,* 579 P.2d at 978, *FutureSelect*

---

[5] *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874 (D. Md. 2016) (referring to Defendant Marriott International as a hotel franchisor when its foreign subsidiary operated the Hotel hosting a guest injured at the on-site casino).

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 10

*Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wash. App. 840, 882 (2013), *aff'd*, 180 Wash. 2d 954 (2014) ("Apparent agency occurs, and vicarious liability for the principal follows, where a principal makes objective manifestations leading a third person to believe the wrongdoer is an agent of the principal.").

For example, in *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 167 (4th Cir. 1988), the Fourth Circuit found a motel franchisor could be liable for injuries to guests assaulted on the premises under an apparent agency theory. The Court pointed to several significant facts: (1) the franchisor retained significant control over the operations of the motel under the franchise agreement, including use of its trade name and trademarks, which appeared on numerous items in and about the motel; (2) the motel was originally designed and built by a franchisor; (3) the franchisor's national advertising promotions failed to distinguish between company-owned and franchised properties; and (4) the means through which the injured guests learned of the motel at which they were assaulted also failed to distinguish between company-owned and franchised properties. *Id.*

*Stenlund v. Marriott International, Inc.*, 172 F. Supp. 3d 874 (D. Md. 2016) also offers instructive guidance. There, a guest at the Panama City Marriott Hotel in Panama tripped and sustained injuries in the Hotel's "on-site" casino. Defendant Marriott International had signed a contract with Hotel Properties of Panama, Inc., which was to build and then own the Hotel. *Id.* at 877-878. Defendant's foreign subsidiary operated the Hotel. *Id.* When the Hotel owner decided to open a casino adjacent to the Hotel, the operating agreement between the owner and operator was amended to specify that the Casino "is deemed to be separate from, and not a part of, the Hotel." *Id.* at 880. The Court decided that the fact that the casino where the guest tripped and sustained injuries was promoted and marketed as being hotel franchisor's "on-site" casino

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 11

was insufficient to hold Defendant Marriott International liable on apparent agency theory.[6] *Id.* at 888. The Court reasoned that even if the guest had a subjective belief that the casino was owned or controlled by Marriott International, it was not objectively reasonable in light of fact that casino employees wore different uniforms than hotel employees that did not bear the hotel name, exterior entrance to casino was distinct from hotel entrance, and casino did not use any of hotel's trademarks or its trade name except for sole purpose of indicating casino's location. *Id.*

Here, Plaintiff argues that "[b]ecause of the name and the way in which business is managed and operated, customers are led to believe they are dealing with the more well known company." Dkt. #15 at 6. Just as "the denial of an agency relationship in a franchise agreement is not alone determinative of liability," *Crinkley v. Holiday Inns, Inc.*, 844 F.2d at 167, Defendant's denial of an agency relationship because "Marriott was not a party to the management agreement executed between Erawan and LHR related to the management and operation of the subject Hotel, nor was Marriott involved in directing LHR's day to day business functions," Dkt. #14 at 6, does not preclude Plaintiff's claim.

The Court finds that Plaintiff's apparent agency theory against Defendant is more than sufficient at this stage of litigation. For the foregoing reasons, the Defendant's bare assertions are insufficient to preclude Plaintiff's amended complaint, and the Court cannot find that Plaintiff's amendment—specifying theories of vicarious liability—is futile.

**D. Relation Back of the Amended Complaint**

Federal Rule of Civil Procedure 15(c) provides that an "amendment to a pleading relates back to the date of the [filing of the] original pleading when the amendment changes the party

---

[6] The Court noted the question of whether it was objectively reasonable for Plaintiff to assume that the *Hotel* was owned, operated, and controlled by Marriott International, as opposed to being managed by a foreign subsidiary of the Defendant. *Stenlund*, 172 F. Supp. 3d at 888 ("[I]f an apparent agency relationship existed between Marriott International and Marriott Services, the entity managing the day-to-day operations of the Hotel, *see* ECF No. 40-1, then Marriott International might be liable for that alleged negligence.").

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 12

or the naming of a party against whom the claim is asserted." *See also Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). Thailand has a one-year statute of limitations for injury claims, and understanding that Thai law could apply, the statute of limitations would have run on December, 7, 2016—after Plaintiff filed her original complaint but before requesting this Amendment. Dkt. #7 at 5. Defendant Marriott has not argued against allowing Plaintiff's amended complaint to relate back to the date of the filing of the original complaint. Moreover, Plaintiff alleges LHR had actual notice of the injury and the claim against them within the applicable statute of limitations period. *See* Dkts. 7-1 at ¶ 23 and #7 at 2 and 10. *See also Schiavone*, 477 U.S. at 29. Therefore, Plaintiff may amend her Complaint to relate the claims against newly-added parties back to the filing date of the original Complaint.

### E. Defendant's Motion to Dismiss

Plaintiff's Amended Complaint will supersede the original complaint. *See, e.g., Robinson v. Wells Fargo Bank Nat'l Ass'n*, No. C17-0061JLR, 2017 WL 1233118, at *1 (W.D. Wash. Apr. 4, 2017) (citing *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*)). Thus, the Court denies Defendant's Motion to Dismiss as moot. *See, e.g., Robinson*, at *1 (dismissing a defendant's motion to dismiss as moot in light of the plaintiff's amended complaint).

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1) Plaintiffs' Motion to Amend Complaint (Dkt. #7) is GRANTED.

2) Plaintiffs shall file their Proposed Second Amended Complaint, Dkt. #7-1.

//

3) Defendants' Motion to Dismiss (Dkt. #4) is DENIED.

DATED this 11th day of May 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS - 14